Coggill *vs.* The Millburn Land Company and others.

1. A mortgagor will not be permitted to commit waste upon the mortgaged premises to the extent of rendering them an insufficient security for the mortgaged debt.

2. No authority to commit waste upon mortgaged premises will be implied from the object for which the property was purchased, nor from the price agreed to be paid.

On motion to dissolve injunction, on bill and answer, and affidavits annexed thereto, respectively.

*Mr. Joseph C. Potts,* for the motion.

*Mr. F. H. Teese, contra.*

The Chancellor.

The bill is filed by a mortgagee to restrain the defendants, the Millburn Land Company, the owners of the equity of redemption, and John S. Reeve, Henry C. Agens, and Nathaniel Bonnell, to whom the company have sold wood standing on the property, from committing waste on certain mortgaged premises in the township of Millburn, in the county of Essex. The complainant's mortgage was given to her by William H. Potts, on or about February 27th, 1873, to secure the payment, (with interest,) of $100,000 of the purchase money, ($119,000,) of those premises, on the sale thereof by her to him at that time. The principal was payable in installments—$25,000 on the 1st of December, 1877, $30,000 on the 1st of December, 1878, and the balance,

:$45,000, on the first of December, 1879. The mortgage con⁻ tained a covenant that in case of default in the payment of :any installment of principal or interest, for ninety days, the whole principal remaining unpaid should, at the option ·of the complainant or her legal representatives, be immedi- ately due and payable. The mortgagor conveyed his interest in the premises, subject to the mortgage, which was computed as part of the consideration of that conveyance, to the Mill- burn Land Company, by deed of even date with that instru- ment. The bill alleges that neither the company nor Potts is possessed of sufficient property, exclusive of the mort- gaged premises, to pay the mortgage, and that the complain- ant is therefore obliged to look to the mortgage for payment ·of the money secured thereby. It further states that the premises are a scanty and slender security for the payment of that money ; that they consist of unimproved land with a large ·amount of valuable trees and timber standing thereon, which ·cannot be cut down without greatly diminishing the complain- ant's security, and that the premises being, as she believes, barely sufficient for the payment of the mortgage debt and interest, any waste or destruction of them by removing the trees and timber would occasion the complainant the loss of part of her debt. It further states that the company has sold to the ·other defendants all the timber and trees growing on the premises, and that at the time of the filing of the bill the latter had begun to cut down the trees, and were thus com- mitting waste, and that they had then already removed from the premises a considerable amount of timber cut therefrom, and would, unless restrained, continue the waste. The bill was duly verified. On the filing thereof an injunction was issued, pursuant to its prayer. The company alone answered. The defence set up is that the premises were purchased at a very high price; that the land is of a poor quality for farm- ing purposes and has not been under cultivation for many years, on account of its sterile character ; that a portion of it is overgrown with wood, and a much larger part is covered with bushes and underbrush, presenting an unsightly appear-

ance and greatly interfering with passage on foot or other-
wise in and across it; that the true value of the land consists
in its high situation and its undulating surface, the view it
commands, and its proximity to New York, and to facilities
for travel to that city; that, estimating the land, for these
reasons, to be valuable for villa sites, the company purchased
it, nominally from Potts, but really from the complainant,
for what they regard as the large price of $119,000, and paid
$19,000 in cash on account of it on the delivery of the deed,
securing the balance by the mortgage.

The company " aver and so charge the truth to be," that
the complainant well knew, that neither the company nor
Potts purchased the property because of the wood on it, or
for farming purposes, but solely for the purpose of laying out
roads through it, removing the underbrush, cutting off the
wood wherever it interfered with the making of roads or with
the outlook or prospect, or in any wise detracted from the
proper improvement of the land for villa sites, with lawns
and customary improvements; that, in the prosecution of the
purposes for which they purchased the land, they have pro-
jected roads and avenues upon a portion of the property, and
are further engaged in making plans for such improvements;
that the peculiarity of the land, its beautiful rolling character,
requires much skill in the work, and the company have found
it necessary to remove the underbrush, and so much of the
woods as interferes with the outlook and prevents the real
beauty of the place from being seen and appreciated; that
they are doing this work preparatory to bringing the prop-
erty in whole or in part into the market, during this spring
and the next summer; that the timber on the land is not of
heavy growth or of great size or value; that about half of it
is only fit for fire-wood, consisting of oak, birch, gum, maple
and pine; that there are some chestnut trees from seven to
twelve inches in diameter, which are the trees of the greatest
value, being fit for rails, posts, and ties, and that the whole
value of these does not exceed $1000; that for the purpose of
clearing the grounds so as to prepare them for the sale the

company contemplate, they have contracted with the other defendants to cut off such of the wood and underbrush as is necessary for that object; that the contract does not embrace all the timber and trees, but expressly reserves such trees, large or small, as have good tops, for shade trees. The company by their answer further say, that by preserving the trees suitable for shade and ornament, and removing all others, with the underbrush, that interfere with the laying out of roads and avenues, proper for the due development of the property, and by removing all impediments to getting the knolls into grass for lawns, and by clearing away the obstructions to the prospect from the land, the company are greatly enhancing the value of the property and not committing any waste thereon, but are, in fact, applying the land to the uses, and solely to the uses, contemplated by both them and the complainant when the company became the purchasers of the property. By the contract, a copy of which is annexed to the answer, the company sold to the other defendants for $1650, to be paid to the former, all the wood standing on the property, excepting such trees, large and small, as have good tops, for shade trees, such trees to be identified by being marked with white paint before the cutting begins. The allegations of the bill, as to the want of pecuniary responsibility of William H. Potts and the company, are not denied. From the affidavits appended to the answer, it appears that the land has no value for agricultural purposes, and that it is a scant security for the money secured by the mortgage. The mortgagor in possession of mortgaged premises, though he may exercise all acts of ownership, even to the extent of committing waste which does not impair the security, will nevertheless, even though the debt be not yet due, be restrained from such unauthorized acts as depreciate the value of the premises and render the security insufficient. The motion to dissolve the injunction in this case, is based on what may be characterized as a claim of license by implication, a claim of implied authority to adapt the premises to the purposes for which they were purchased. Both parties agree that the land in its

present condition, is by no means a sufficient security for the mortgage debt. It is not claimed that the complainant has ever expressly authorized the company to cut down the trees, but the latter insist that inasmuch as the complainant was not only cognizant of the purposes for which the premises were purchased by them, but sold the property for those purposes, at what they regard as an exorbitant price, it is inequitable to restrain them from adapting the land to the objects contemplated by both parties in the purchase and sale. The evidence on this head is very unsatisfactory. It consists rather of the statement of the view of the company in making the purchase (which they say, though nominally made by William H. Potts, was in fact, made by them through him,) and of deductions to be drawn from the character of the land and the price paid for it, and the objects of the company, (which appear to have been to buy and dispose of this property,) than of proof of license. The evidence consists of the affidavit of William H. Potts, who swears that he negotiated the purchase, that the complainant was represented by Henry M. Coggill, and that in the conversation with the latter, it was distinctly understood that the object of the purchasers was to suitably prepare the lands for villa sites, and to bring them into market and sell them as such; and of the affidavit of Benjamin C. Potts, to the effect that by the request of Henry M. Coggill, who, he says, was acting as agent for the complainant, he called the attention of William H. Potts to the property, with a view to the purchase of it by the latter; that on behalf of Henry M. Coggill, he represented the value of the land to consist mainly in its rolling character, suitable for building sites for cottages and villas, and peculiarly adapted to landscape gardening and improvements of like character, and in its proximity to New York, by means of the Morris and Essex railroad running through it, and also by means of the West Line railroad, when it should be completed, and that Henry M. Coggill well knew it to be the purpose of the company to improve the lands, and sell them in small lots

for villa sites, at the time he offered them for sale to the deponent. Apart from the fact that the agency of Henry M. Coggill, to contract for or bind the complainant, is not established, there is in all this, no evidence of any license. No authority to commit waste upon the premises, will be implied from the object for which the property was purchased by the company, nor from the price agreed to be paid. The case of *Brick* v. *Getsinger*, 1 *Halst. Ch.* 391, is in some respects in point. There the mortgaged premises were glass-works and outlying land, about three thousand acres, mainly woodland, bought for use in connection with the works to supply them with fuel. About three hundred acres of the wood and timber land had been over-run with fire, which greatly injured and destroyed the growing wood, and the defendants, when enjoined, were engaged in cutting down this wood. They had cut the wood off about twenty-four acres, and were using it for the ordinary purposes of the glass-works, and were not, as they insisted, committing any waste, the burnt wood being unfit for market and for any other purpose than that to which they were applying it. And they allege, that if it had been left standing till a second summer, it would have been worthless for any purpose. The defendants further stated, that it was of the greatest importance to the property and its owners, with reference to the rest of the wood, that this wood should be cut without delay, and that, at the time the mortgage was given, the premises were used for the purposes of a glass-factory; that the glass-works were then on the property, and were in operation when the mortgage was made, and had been in operation before that time, and that the mortgage was taken with the express understanding and knowledge that the mortgaged premises were then used, and would continue to be used for making glass. They disclaimed any desire or intention to injure the complainant's security, but professed to be desirous of prosecuting their legitimate business in the ordinary way, and offered, rather than suffer the loss and inconvenience that must result to them from the continuance of the injunction, to give, under the direc-

tion of the court, undoubted security for the payment of such sum, as on a fair and proper adjustment, might appear to be due on the complainant's mortgage. In disposing of the motion to dissolve the injunction, the Chancellor said: " If a large proportion in value of pine woodland mortgaged, be burnt over, and it be proper to save the wood, and for the benefit of the land, that the burnt wood be cut off, the lands themselves being worth but little without wood on them, it would be right that the wood so burned and cut should be applied toward the mortgage," and he deemed it just that the court should avail itself, as terms on which the injunction should be dissolved, of the defendant's offer of security, so far as to direct that security be given by them for an amount equal to the value of the burned wood they proposed to cut. In the present case the company have sold the wood and timber for the sum of $1650, (which may be much less than its real value,) payable to them, and which, for aught that appears to the contrary, they intend to apply to their own use. This they ought not to be permitted to do. On the case as made by the pleadings and affidavits, I am not willing to grant the motion to dissolve. There is an additional reason for refusal. It appears that since the issuing of the injunction the complainant has filed her bill in this court to foreclose her mortgage, alleging that interest is in arrear, and that default having continued for the time in that behalf fixed in the mortgage, she has exercised the option given her in that instrument, and that the whole of the principal has thus become due.

The motion is denied, with costs.